

Case 3:23-cr-01819-JES    Document 1    Filed 08/28/23    PageID.1    Page 1 of 4

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br><br><br>Fernando RIVAS,<br><br><br><br>　　　　　Defendant. | Magistrate Docket No. '23 MJ3151<br><br>COMPLAINT FOR VIOLATION OF:<br>Title 8, U.S.C. § 1324(a)(1)(A)(ii)<br>Transportation of Illegal Aliens |

The undersigned complainant being, duly sworn, states:

On or about August 27, 2023, within the Southern District of California, defendant, Fernando RIVAS, knowing or in reckless disregard of the fact that certain aliens, namely, Sergio Bonifacio MAGANA Montes, Bryan Alexis PALOMAR Munoz, and Erick Manuel PALOMAR Munoz, had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached probable cause statement, which is incorporated herein by reference.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　SIGNATURE OF COMPLAINANT
　　　　　　　　　　　　　　　　　　Jesse Bojorquez
　　　　　　　　　　　　　　　　　　Border Patrol Agent

SWORN AND ATTESTED TO UNDER OATH BY TELEPHONE, IN ACCORDANCE WITH FEDERAL RULE OF CRIMINAL PROCEDURE 4.1, ON AUGUST 28, 2023.

　　　　　　　　　　　　　　　　　　*William V. Gallo*
　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　HON. WILLIAM V. GALLO
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

CONTINUATION OF COMPLAINT:
Fernando RIVAS

## PROBABLE CAUSE STATEMENT

The complainant states that Sergio Bonifacio MAGANA Montes, Bryan Alexis PALOMAR Munoz and Erick Manuel PALOMAR Munoz, are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On August 27, 2023, Supervisory Border Patrol Agent J. Decker was conducting assigned duties in the Campo Border Patrol Station's area of responsibility. Agent Decker was wearing his full rough duty uniform with agency badge and insignia visible. At approximately 12:52 PM, Agent Decker was patrolling the area of Tierra Del Sol Road (TDS) and State Route 94, when he was informed by dispatch of a citizen's report. A citizen observed several individuals coming out of the brush and getting into a black GMC Sierra pickup truck near an area known to Border Patrol Agents as "Maupins." Agent Decker responded to the area and as he was driving south on TDS, he came across the citizen that made the report. The citizen informed Agent Decker that the black truck loaded individuals on his driveway and took off.

At approximately 12:59 PM, as Agent Decker continued driving south on TDS, he observed the black truck and got behind it to run record checks. After Agent Decker started to follow the black truck, he noticed that it started to swerve from side to side. Agent Decker was informed that the black truck was registered to a business out Garden Grove, California, with travel history in the area. Agent Decker was also informed by the reporting citizen, who was driving by his location, that that black truck was the vehicle that he witnessed people getting into.

At approximately 1:00 PM, Agent Decker initiated a vehicle stop on the black truck at the train tracks on TDS, Border Patrol Agent K. Wilson was his back-up. This area is approximately 18 miles east of the Tecate, California Port of Entry and approximately half a mile north of the United States/Mexico International Boundary. Once the vehicle came to a complete stop the rear door of the black truck opened, but Agent Decker quickly ran and prevented anyone from absconding. Agent Wilson approached the driver's side and quickly secured the driver, later identified as the defendant, Fernando RIVAS, in handcuffs and help Agent Decker with rest of the individuals.

Agent Decker got the four individuals that were in the cab out and sat them down. Agent Decker then opened the tailgate of the truck bed, and he encountered five more individuals in

**CONTINUATION OF COMPLAINT:**
Fernando RIVAS

the back of the truck. Agent Decker had the five individuals get out of the truck and sit on the ground with the four others. Agent Decker conducted an immigration inspection on the nine individuals. All nine individuals, including three later identified as material witnesses, Sergio Bonifacio MAGANA Montes, Bryan Alexis PALOMAR Munoz, and Erick Manuel PALOMAR Munoz, stated that they are citizens of Mexico without any immigration documents that would allow them to enter or remain in the United States legally. At approximately 1:10 PM, Agent Decker placed all ten individuals, including RIVAS, MAGANA, Bryan PALOMAR, and Erick PALOMAR, under arrest. RIVAS stated that he was a United States citizen.

The defendant, RIVAS, was read his Miranda rights. RIVAS stated he understood his rights and agreed to speak with agents without an attorney present. RIVAS described being stopped by masked men, which he assumed to be cartel members, in Tijuana, Mexico. RIVAS stated one of the masked men approached him and offered him work but was not told what type of work. RIVAS stated he declined the work. RIVAS stated approximately one week after the encounter, he was stopped again and approached by a different masked man. RIVAS stated that he suspected this individual was possibly the boss or someone more important than the others. RIVAS stated the individual was aggressive and threatened to kill him and his four dogs if he did not comply and work for them. RIVAS stated they asked for his phone number and later started to contact him. RIVAS stated that he was being ordered to download the application Turo onto his cellphone. RIVAS was later told to meet with a man known as "Sergio". RIVAS stated they met in Chula Vista, California. RIVAS stated that Sergio informed him he needed to rent a vehicle. RIVAS informed him that he could not rent a vehicle due to his Turo account being canceled. RIVAS stated that Sergio told him to figure it out and find a rental vehicle. RIVAS stated that he asked a co-worker to rent him a vehicle. RIVAS went on to state that Sergio later began to contact him via WhatsApp and phone calls. RIVAS stated that Sergio informed him he would be paid $5,000 for the work. RIVAS stated that he declined the money due to fear for his life. RIVAS also stated that another individual in Tijuana instructed Sergio he was to offer him the money. RIVAS stated that Sergio requested that he share his live location via WhatsApp. RIVAS stated that approximately 4:00 AM, on August 27, 2023, he left his home in Tijuana, Mexico. RIVAS stated that he picked up the truck in Chula Vista, California and drove to work to await further direction. RIVAS stated at approximately 7:00 AM he was given directions to Chula Vista and met with Sergio. RIVAS stated that Sergio gave him $500 for fuel and blankets to be used later. RIVAS was later given directions to Viejas Casino, located in Alpine, California. RIVAS stated he waited for approximately 30 minutes before being given further directions. RIVAS stated he was being guided via WhatsApp until he

CONTINUATION OF COMPLAINT:
Fernando RIVAS

arrived at the given location. RIVAS stated that he was given directions to stop and wait shortly after. RIVAS stated that moments later he saw individuals crawling under the fence and opened the doors to his vehicle. RIVAS stated he had seen a female and child climb into the rear seats with a single male. RIVAS stated a single male climbed into the front seat and others climbed into the bed of the tuck. RIVAS stated, while being guided, that he had made a wrong turn and had conducted two U-turns before being told again that he was traveling in the wrong direction. RIVAS stated shortly after he was pulled over. RIVAS stated during the stop he overheard a radio telling the individuals to run in Spanish.

Material witnesses, Sergio Bonifacio MAGANA Montes, Bryan Alexis PALOMAR Munoz, and Erick Manuel PALOMAR Munoz stated they are citizens of Mexico without any immigration documents allowing them to enter or remain in the United States legally. Erick PALOMAR stated he made smuggling arrangements prior to entering the United States. MAGANA and Erick PALOMAR stated they agreed to pay approximately $11,000 to $17,000 USD in smuggling fees if successfully smuggled into the United States. Bryan PALOMAR and MAGANA, Bryan PALOMAR, and Erick PALOMAR stated several people with face coverings helped them cross over the border fence using ladders. MAGANA, Bryan PALOMAR, and Erick PALOMAR stated they were given radios and were remotely guided to the pickup location. MAGANA and Bryan PALOMAR stated that a black GMC truck arrived and the driver got out of the truck and yelled "subanse" (which translates in English as, "get on"). Erick PALOMAR stated that a black truck arrived, and people began entering the truck. MAGANA and Erick PALOMAR stated they jumped into the bed of the truck. Erick PALOMAR stated that an unknown person closed the bed truck cover after this. Bryan PALOMAR stated that he jumped into the bed of the truck and laid down and the driver of the truck closed the bed truck cover after this. MAGANA, Bryan PALOMAR, and Erick PALOMAR stated the driver of the truck began driving at a high rate of speed and erratically. Erick PALOMAR stated the driver of the truck kept swerving, causing him to injure his back. MAGANA stated that while in the back of the bed began to feel like they could get into an accident. MAGANA and Bryan PALOMAR stated that the bed of the truck was closed, and they felt like they were being asphyxiated or suffocated. MAGANA, Bryan PALOMAR, and Erick PALOMAR stated they heard police sirens and the vehicle stopped, then they were apprehended by Border Patrol agents.